IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ANASTASSIA DROFA,  )<br>  )<br>  Plaintiff,  )<br>  )<br>v.  )<br>  )<br>PASSIVE WEALTH BUILDERS, LLC,  )<br>ROCKETSELL, LLC,  )<br>ZANE INVESTMENT CO.,  )<br>BRITE SOLUTIONS, INC.,  )<br>SMARTREZI REALTY, LLC,  )<br>STREETDIVVY, INC.,  )<br>JOSHUA JACKSON, and  )<br>ARNOLD TODD YARGER,  )<br>  )<br>  Defendants.  ) | Civil No. 2:22-cv-02191-JTF-atc |

### ORDER DENYING DEFENDANTS BRITE SOLUTIONS, INC. AND ARNOLD TODD YARGER'S MOTION TO DISMISS

Before the court is Defendants Brite Solutions, Inc. and Arnold Todd Yarger's Motion to Dismiss, filed on August 9, 2022.[1] (ECF No. 19.) Plaintiff Anastassia Drofa filed a Response on September 5, 2022. (ECF No. 27.) The Defendants filed a Reply on September 19, 2022. (ECF No. 31.) For the below reasons, the Court **DENIES** the Defendants' motion.

**I.      FACTUAL AND PROCEDURAL HISTORY**

Anastassia Drofa, a New York resident, lent Defendant Passive Wealth Builders, LLC ("PWB") $150,000 pursuant to a note ("the PWB Note") on February 7, 2020. (ECF No. 1, 3.)

---

[1] An identical Motion to Dismiss was filed by these same defendants in a related case, *Wu v. Passive Wealth Builders, et al.*, No. 2:21-cv-02205-JTF-atc, on the same day.

The PWB Note guaranteed Drofa a twelve percent interest rate for a one-year repayment period running from February 7, 2020, to February 12, 2021, with principal and interest due at the end of that period. (*Id.*) The PWB Note further guaranteed a twelve percent interest rate past any point of default. (*Id.*) If PWB was ever over 5 days late on a payment, the note provided for a five percent late charge fee and a $25 per day late fee for every calendar day a payment was not made. (*Id.*) Drofa lent PWB, along with Defendant Rocketsell, LLC, an additional $100,000 on March 12, 2020, and another $180,000 on August 27, 2020, with both loans subject to the same terms as the original PWB Note. (*Id.* at 4.) The purpose of these notes, as told to Drofa "verbally and in the language contained in the Notes" by defendants PWB, RocketSell, and Joshua Jackson, was to "invest the funds loaned by Drofa into real property and pay Drofa the profits from said investments." (*Id.*)

According to the Amended Complaint, these loans were fed into a somewhat complex corporate structure. Defendant Joshua Jackson is an authorized agent of defendant Zane Investments Co. ("Zane"), and Zane is a managing member of PWB. PWB is structured as a Tennessee Limited Liability Company. (ECF No. 1, 1-2.) Jackson is also a member and the CEO of RocketSell, again structured as a Tennessee LLC. Defendant Arnold Yarger is the owner and CEO of Defendant Brite Solutions, Inc. ("Brite"), a Tennessee Domestic Corporation that serves as a managing member of PWB. (*Id.*) PWB, RocketSell, and Zane are all headquartered at 140 S Main Street, Collierville, TN 38017. (*Id.*) The remaining defendants, specifically Smartrezi Realty, LLC, and Streetdivvy, Inc., are Texas corporations owned by Jackson. (*Id.* at 2.)

The companies secured the loans from Drofa through a series of "untrue statements of fact, and/or omitted material facts[.]" (ECF No. 1, 5.) Specifically, PWB, RocketSell, and Jackson told Drofa that they would "invest the funds loaned by Drofa into real property and pay Drofa the

profits from said investments." (*Id.*) However, they instead fraudulently purchased, or possibly merely represented they purchased, real property and stole the balance of and any profits realized from Drofa's loans. (*Id.*) As an example, Drofa states that "PWB, RocketSell, and Jackson represented that they purchased real property with the address of 714 Westmount Ave, Dallas, Texas, for $150,000 with the funds Drofa loaned Defendants." (*Id.*) At the same time, the Defendants told a different investor, Eugene Wu, that they had purchased that same property with funds he had loaned them.[2] (*Id.* at 6.) The Defendants then sold 714 Westmount Avenue to "HEB Homes, LLC" and absconded with all of the funds and profits. (*Id.* at 6.) Drofa also states that PWB's bank accounts confirm that PWB "spent the funds piecemeal in multiple and various transactions, including payments for personal vehicles, taxes and credit cards." (*Id.*)

Drofa filed the present suit on March 28, 2022. (ECF No. 1.) In her Amended Complaint, she asserts five counts, although Count V has two independent subparts. Count I is a Breach of Note claim against PWB. (*Id.* at 7.) Count II is a Breach of Note claim against PWB and RocketSell. (*Id.* at 8.) Count III is a "Piercing of the Corporate Veil of RocketSell and PWB" claim as to Jackson, or an attempt to assert the Breach of Note claims against Jackson in his personal capacity. (*Id.* at 8-9.) Count IV is the same as Count III, but asserted against Yarger as a "Piercing of the Corporate Veil of PWB and Brite[.]" (*Id.* at 9-10.) Count V asserts a "Violation of Tennessee Securities Act of 1980" against all Defendants but has two subparts, which the Court will refer to as Count V(a) and Count V(b). First, in Count V(a), Wu asserts violations of Tenn. Code Ann. §§ 48-1-121 & 122(a) against PWB, RocketSell, and Jackson. (*Id.* at 11.) Second, in Count V(b), Wu asserts violations of Tenn. Code Ann. § 48-1-122(g) against Brite, Zane, Smartrezi, Streetdivvy, Yarger, and Jackson. (*Id.* at 12.)

---

[2] As stated in Footnote 1, Wu has a related case pending before this Court against the same defendants.

On August 9, 2022, Yarger and Brite filed the present Motion to Dismiss, which only seeks to dismiss Counts IV and V(b). (ECF No. 19.) In the Motion, Brite and Yarger argue that Drofa has not met the heightened pleading standard for fraud as to them. They assert that the Amended Complaint alleges no directly fraudulent actions taken by anyone other than Jackson and the companies he directly controlled or for which he acted as agent. (*Id.*) On September 5, 2022, Drofa filed a response, arguing that she need not meet the heightened pleading standard as to Brite and Yarger since their liability is premised on Tenn. Code Ann. § 48-1-122(g). (ECF No. 27.) Brite and Yarger filed a final Reply on September 19, 2022. (ECF No. 31.)

## II.    LEGAL STANDARD

To avoid dismissal for failure to state a claim under Rule 12(b)(6), "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also* Fed. R. Civ. P. 12(b)(6). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Without factual allegations in support, mere legal conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679. Allegations must be enough to raise a right to relief above "the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Where a plaintiff pleads a claim involving fraud, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement. To satisfy the Rule, "the plaintiff must allege (1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." *Smith v. General Motors LLC*, 988

4

F.3d 873, 883 (6th Cir. 2021) (quoting *Wall v. Mich. Rental*, 852 F.3d 492, 496 (6th Cir. 2017) (internal quotation marks omitted)). Essentially, a claim of fraud requires the plaintiff to specify the "who, what when, where and how" of the alleged fraud. *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012) (quoting *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006)).

### III.  LEGAL ANALYSIS

1. *Tennessee Securities Act Claims*

In Count V(b), Drofa alleges that Brite and Yarger are liable under Tennessee Code Annotated § 48-1-122(g), a section of the Tennessee Securities Act of 1980 ("the Act") that establishes a kind of supervisory liability for violations of other portions of the Act. Drofa alleges that PWB, RocketSell, and Jackson violated §§ 48-1-121 & 122(a) of the Act by knowingly and intentionally making fraudulent misrepresentations to secure the three loans, and then fraudulently converting the funds received under the Notes. Brite and Yarger do not challenge that Drofa has successfully plead claims against PWB, RocketSell, and Jackson under these sections. Section 122(g) then states, in full:

> Every person who directly or indirectly controls a person liable under this section, every partner, principal executive officer, or director of such person, every person occupying a similar status or performing similar functions, every employee of such person who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the person who would be liable under this subsection (g) proves that the person who would be liable did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There is contribution as in cases of contract among the several persons so liable.

Section 122(g) has not been extensively interpreted or examined by either Tennessee or federal courts. The Tennessee Supreme Court has stated that despite superficial similarities between the Tennessee Securities Act and federal securities laws, the two serve different purposes. "Like

5

Tennessee, states enacted securities regulation to protect investors," while "federal securities regulations, on the other hand, were enacted to serve the broader purpose of protecting the integrity of the increasingly nationalized market." *King v. Pope*, 91 S.W.3d 314, 319-20 (Tenn. 2002) (internal citations omitted). Given that state securities laws "are remedial in character, designed to prevent frauds and impositions upon the public, [they] consequently should be liberally construed to effectuate the purpose of the acts." *Id*. at 323 (quoting *DeWees v. State*, 390 S.W.2d 241, 242 (Tenn. 1965)). "Like other statutes, the court's responsibility is to ascertain and then to give the fullest possible effect to the General Assembly's purpose in enacting the statute as reflected in the statute's language." *Hardcastle v. Harris*, 170 S.W.3d 67, 88 (Tenn. 2004).

Brite and Yarger argue that Rule 9(b) and Tennessee law requires that Drofa plead specific allegations of fraud against them individually. Further, they argue that § 122(g) liability requires Drofa to allege that they "materially aided" the fraud perpetuated by Jackson, PWB, and Zane. Drofa disagrees, arguing that § 122(g) does not require a plaintiff to plead all elements of fraud, so long as all those elements are plead against some underlying defendant.

While the Tennessee Supreme Court has not stated that § 122(g) liability requires independently pleading fraud against those it covers, the Court believes it would be unlikely to do so. Nothing in § 122(g) suggests that a plaintiff must independently plead fraud against the wide range of persons listed as potentially liable. Courts have previously noted the "breadth of this section," and found that "where the plaintiff has alleged that the 'defendants were generally involved' in the business at issue and 'had the power to control the transactions in which the securities fraud occurred, the plaintiff has sufficiently stated a claim under Section 122(g)." *Receiver of Assets of Mid-America Energy, Inc. v. Coffman*, 719 F. Supp. 2d 884, 893 (M.D. Tenn. 2010) (quoting *Colbert & Winstead, PC 401(k) Plan v. AIG Fin. Advisors, Inc.*, No. 3:07-

6

1117, 2008 WL 2704367, at *7-8 (M.D. Tenn. Jul. 8, 2008)); *see also Iseman v. Werner*, No. 3:19-CV-365-TRM-DCP, 2020 WL 4674113, at *20 (E.D. Tenn. Aug. 12, 2020) (utilizing the *Coffman* test); *Clayton v. Heartland Resources, Inc.*, No. 1:08CV-00094-JHM, 2011 WL 2534088, at *3 (W.D. Ky. Jun. 27, 2011) (utilizing *Coffman* in part when analyzing a similar Kentucky law). Section 122(g) assigns liability to all who "directly or indirectly control[] a person liable under this section." "Person[s] liable" are those who have committed some fraud. This quasi-supervisory liability for securities fraud would be hobbled by an interpretation requiring a plaintiff to assert that those with control independently undertook fraudulent actions and would be in conflict with previous applications of the section.[3] For example, in *As You Sow v. AIG Fin. Advisors, Inc.*, the Middle District of Tennessee allowed a claim under § 122(g) against AIG to proceed where the only allegation was that one of their many registered agents had defrauded the plaintiff, and that AIG had taken no action to stop it. 584 F. Supp. 2d 1034, 1042-43 (M.D. Tenn. 2008). The Court there looked at whether the plaintiffs had sufficiently alleged fraud under Rule 9(b) as to the underlying agent who had defrauded them. *Id.* at 1045-46. The Court then noted that "Plaintiffs plead the provisions of § 48-2-122(g) that the Defendants had the authority to control Stokes's conduct and theft as their agent," before allowing the claims against the underlying agent and AIG to proceed. *Id.* The Court finds that Drofa need not plead independent participation in the fraud by Brite and Yarger in order to state a claim under § 122(g).

Further, the Court finds that Drofa need not allege that Brite and Yarger "materially aided" any underlying fraud. The Defendants argue that § 122(g) requires Drofa to allege that they

---

[3] Further support is found in the section's enumerated affirmative defense, which removes liability if the person can prove that they "did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist," a standard of negligence. If a plaintiff were required to plead independent fraudulent actions against defendants, the pleading standard for § 122(g) would require asserting facts irrelevant to its own affirmative defense standard.

7

"materially aided PWB, RocketSell or Jackson in committing any fraudulent violation." (ECF No. 19-1, 8.) However, as Drofa points out, the "materially aids" qualifier in § 122(g) only applies to "every employee" and "every broker-dealer or agent" of a person liable under the Act. The Act imposes no qualifications on "every partner, principal executive officer, or director of such person, [nor on] every person occupying a similar status or performing similar functions[.]" Tenn. Code Ann. 48-1-122(g); *see also Coffman*, 719 F. Supp. 2d at 892 (Section 122(g) "imposes liability on various individuals *and* 'agents' who 'materially aid or control an individual who is liable[.]'") (emphasis added). With these standards established, the Court now examines Drofa's allegations to determine whether she has stated a claim under § 122(g).

Here, Drofa alleges that Jackson, PWB, and RocketSell made fraudulent misrepresentations that induced her to loan PWB and RocketSell a total of $430,000. These funds were then illegally used for non-prescribed purposes and transferred "into accounts of other individuals/entities, including to Zane, Smartrezi and Streetdivvy for the purpose of defrauding Drofa and converting Drofa's funds." (ECF No. 1, 11.) Drofa also alleges that at all times, Brite and Yarger were managing members of PWB, generally involved in PWB's business, had control over these transactions, and could have prevented these transactions. (*Id.* at 12.) Thus, Drofa has alleged that Brite and Yarger were generally involved with the business and that they exercised control of the transactions at issue. Looking at the statutory language, Drofa has adequately alleged that Jackson, PWB, and RocketSell are liable under the Act, and that Brite and Yarger were "occupying a similar status or performing similar functions" by serving as managing members of PWB. Brite and Yarger protest that these allegations are not true, but the Court must take all facts in the complaint as true for purposes of a Motion to Dismiss. *Southeast Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 671 (6th Cir. 2006). At this stage, the Court

believes that Drofa has adequately stated a claim under § 122(g). Accordingly, the Defendant's Motion to Dismiss Count V(b) is denied.

2. *Veil Piercing Claims*

In Count IV, Drofa seeks to assert liability against Brite and Yarger directly by piercing the corporate veil of PWB. First, Drofa seeks to pierce the veil between PWB, a Tennessee Limited Liability Company, and Brite, a Tennessee Domestic Corporation which served as a "managing member" of PWB. Second, Drofa seeks to pierce the veil between Brite and Yarger, who serves as Brite's CEO and owner. The Tennessee Supreme Court has identified three elements required to piece the corporate veil between a parent corporation and its subsidiary (or between a limited liability company and its members). These elements are also used to hold an individual owner liable for a corporation's debts. *Edmunds v. Delta Partners, L.L.C.*, 403 S.W.3d 812, 829-30 (Tenn. Ct. App. 2012). The elements are:

1) The parent corporation, at the time of the transaction complained of, exercises complete dominion over its subsidiary, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will or existence of its own.

2) Such control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of third parties' rights.

3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Id.* at 629 (quoting *Continental Bankers Life Ins. Co. of the South v. The Bank of the Alamo*, 578 S.W. 2d 625, 632 (Tenn. 1979)). Thus, "Tennessee law still requires an element of fraud in order to pierce a corporate veil." *Southeast Texas Inn, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 673 (6th Cir. 2006). The Defendants argue that Drofa has not plead fraud against them, as she "just regurgitates the statutory language with sprinkles of the name Brite and Yarger and claims that is enough." (ECF No. 31, 3.)

9

Drofa's complaint alleges that both Brite and Yarger were managing members of PWB. The complaint states that Brite and Yarger were generally involved in the business and had control over the relevant transactions. Drofa states that Brite and Yarger specifically "participated in the fraudulent purchases of real property, and fraudulent transfers of Drofa's funds, with PWB and Rocketsell." (ECF No. 1, 6.) Drofa also points to Brite's brief, which states that the company loaned PWB "approximately $1,000,000, with over $700,000 still owed" as evidence that the company "received preferential payments over Drofa and other lenders." (ECF No. 44, 9.) Finally, Drofa's complaint states that "upon information and belief" Yarger undercapitalized Brite and PWD, used the same physical locations for multiple entities including business done in his own name, used the companies as an "instrumentality," and failed to maintain "arms-length relationship[s]" between Yarger, Brite, and PWB. (ECF No. 1, 10.)

Drofa's allegations made upon information and belief support allowing a veil piercing claim to survive a motion to dismiss. Such allegations "have been held to be permissible, even after the *Twombly* and *Iqbal* decisions." *Cassidy v. Teaching Co., LLC*, No. 2:13-cv-884, 2014 WL 1599518, at *3 (S.D. Ohio Apr. 21, 2014) (quoting Charles A. Wright and Arthur R. Miller, 5 Fed. Prac. & Proc. Civ. § 1224 (3d ed. 2013)). These types of allegations "are the appropriate manner to plead when a plaintiff is drawing reasonable inferences from the facts." *Antioch Litig. Trust v. McDermott Will & Emery LLP*, 738 F. Supp. 2d 758, 765 (S.D. Ohio 2010); *see also Cassidy*, 2014 WL 1599518, at *3 (collecting cases). Based on a review of the entire complaint, the Court finds that Drofa has adequately alleged enough facts to draw these inferences. Drofa has stated that Brite and Yarger were managing members of PWB and could have exercised control or oversight over the underlying fraudulent transactions. At this stage, discovery has not commenced. The exact relationship between Brite, Yarger, and PWB cannot be known, and the

facts that would clarify the relationship are within the control of Brite and Yarger. *Cassidy*, 2014 WL 1599518, at *3 (quoting *Kline v. Mortg. Elec. Registration Sys., Inc.*, No. 3:08cv408, 2011 WL 1233642, at *6 (S.D. Ohio Mar. 29, 2011)) ("even in the post-*Iqbal* world, courts have recognized that facts may be alleged on the basis of information and belief, particularly when those facts are within the possession of the defendant"). Dismissing the possibility of piercing the corporate veil would be premature at this time.

## IV.    CONCLUSION

For the reasons above, Brite and Yarger's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED** on this the 12th day of January, 2023.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE